George W. COFFIN and Enid M. Coffin,
Appellants,

v.

Jess W. FOWLER and Aleen Fowler,
Appellees.

No. 1196.

Supreme Court of Alaska.

April 1, 1971.

M. Ashley Dickerson, Anchorage, for appellants.

No appearances for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

CONNOR, Justice.

Appellees brought an action to recover damages arising from the breach of a lease by appellants. From an adverse judgment, after trial to the court, the Coffins appeal.

Appellees Jess and Aleen Fowler were the owners of an establishment known as the Knik River Drive-In, which is located at the east end of the Knik River Bridge on the old Palmer Highway. On July 15, 1966, they entered into a lease-purchase agreement with the appellants, George and Enid Coffin, under which the Coffins were to pay rental of $300 per month. The lease was to run until July 14, 1968. The Coffins were required to exercise their option before that date. The purchase price was $30,000, and the rent payments were to apply to that sum.

In part because of the opening of the new Palmer Highway, business conditions deteriorated. As a result the Coffins abandoned the property sometime during October, 1966. During the winter following the Coffins' abandonment of the property, the water pipes in a trailer attached to the building froze and the property fell into a state of disrepair. A truck, which was apparently part of the business property, was abandoned by the Coffins on the highway and was subsequently impounded. Certain utility bills incurred by the Coffins in the operation of the business were paid by the Fowlers. During the winter of 1966–67, the Fowlers allowed a family to occupy the premises with no rent, apparently to look after the property. The house trailer was sold to one Robert Freeman about June 1, 1967, for $3,500. Freeman expended about $1,209 to repair the damage to the trailer so as to render it again usable.

The building on the Fowler property encroaches over the property line onto an adjacent tract. The ownership of the neighboring tract is not clear from the record. It may belong to the Matanuska Electric Association, the Eklutna Power Project, the Bureau of Public Roads, or the Alaska Highway Department. Mrs. Fowler testified that she believed that she owned all of the property occupied by the buildings.

■ The Coffins first argue that the lease is void and their abandonment excused because the Fowlers were unable to convey clear title to the property at any time during the tenancy, owing to the encroachment.

However, in its memorandum decision the trial court found that the Coffins vacated the premises due to business difficulties, not because of the encroachment. The Coffins' letter to the Fowlers informing them that the premises were vacated did not even mention the encroachment. The encroachment defense is clearly an after thought. It cannot now be raised as the paramount reason for breaking the lease when in fact the encroachment was not even a motivating factor at the time the Coffins left the premises. Thus, we need not decide whether the encroachment could provide a valid reason to void the lease. It is clear that the encroachment did not in fact cause the Coffins to vacate the premises.

■ The Coffins next argue that the lease-option contract is subject to rescission for the Fowlers' fraud in inducing them to enter into the contract. The fraud claimed is that the Fowlers failed to inform the Coffins that the building encroached onto adjoining land.

Appellants' "fraud" argument is essentially their encroachment argument under a different name. The trial court found neither intentional nor negligent misrepresentation by the Fowlers. Nor did it find that appellants vacated the premises or failed to exercise their option as a direct and proximate result of the encroachment. We affirm the trial court in these findings.

■ Appellants next appear to argue that the court erroneously failed to find that a surrender of the property had occurred. In fact, the trial court did find that a surrender occurred when the trailer on the premises was sold to one Robert Freeman in June, 1967.[1] What appellants are really arguing is that the court should have found that a surrender occurred earlier when the Coffins gave the keys to the premises to a Mr. Olsen, a relative of the Fowlers.[2] The court below also found that the Fowlers permitted another family to live on the premises without rental payment later during the winter of 1966–67 for the purpose of preventing deterioration of the property.

■ It is true, as appellants say, that the relinquishment of keys to a property can work a surrender if offered with the proper intent and accepted with the proper intent. But the trial court found that no such intent on the part of the Fowlers was manifested when Mr. Olsen received the keys, and that they had no intent to accept the surrender in this case before June, 1967. Mere acceptance of keys by the landlord, without more, does not terminate a lease nor relieve the tenant of his obligations. Noce v. Stemen, 77 N.M. 71, 419 P.2d 450,

451 (1966). By the same token, the landlord's actions in placing another family on the premises in order to protect the property from deterioration, vandals and thieves is not indicative of an intention to terminate the lease. The Fowlers had a right to protect their property by placing custodians upon it after they learned of the Coffins' abandonment. There was no finding of an intent to exclude the Coffins from resuming possession. Absent a contrary intention appearing from the record, such acts do not signify a termination of the lease. Pepsi-Cola Metropolitan Bottling Co., Inc. v. Pleasure Island, Inc., 345 F.2d 617 (1st Cir. 1965).

■ Appellants argue that these two facts, the transfer of the keys plus the permissive occupancy of the premises by third persons, constituted a "re-lease" of the property. As indicated above, the trial court found no such intent on the part of the landlords. From our careful review of the entire record, we must conclude this finding is clearly supported by substantial evidence. We find no error on this point.

■ Appellants next argue that by reason of the encroachment the Fowlers breached their implied covenant of quiet enjoyment. However, appellants do not argue that they were in fact disturbed in their enjoyment of the property and the court found that no one having a paramount claim on the adjoining property ever took action against the Coffins.

"It is essential that the acts complained of shall have actually *interfered* with the lessee's use of the demised premises.

1. Although the trailer was arguably personal property, the trial court found:
"However, in June 1967, when plaintiffs sold the house trailer to Mr. Freeman, it is clear that the acceptance of the surrender was complete and unequivocal. The house trailer, as the residential portion of the demised premises was a material component of the bargain. Its sale constituted acknowledgement by the landlord that the lease was at an end."
This finding was amply supported by the evidence presented. Viewing it on appeal,

we cannot say that "we are left with the definite and firm conviction on the entire record that a mistake has been committed." Alaska Foods, Inc. v. American Manufacturer's Mutual Ins. Co., 482 P.2d 842, at 848 (Alaska, March 18, 1971), (footnote omitted).

2. The record is unclear as to whether only the truck keys or the keys to the inn itself were presented. For the purposes of this discussion we assume the keys to the inn were presented.

Mere apprehension that such use may in the future be interfered with is not enough. Thus discovery that lessor had a defective title * * * [is] not sufficient to breach this covenant." 2 Powell, Real Property ¶ 225 [3] (1967) at 235. (emphasis in original).

Again we find no error.

 Appellants next argue that the court erred in failing to find that there was a duty resting on appellees to mitigate damages, and that the appellees failed so to mitigate by not promptly seeking other paying tenants after appellants abandoned the premises. The record shows that Mrs. Fowler was outside of Alaska receiving medical attention when she learned that the Coffins had moved out, and that she did not contact any real estate agent about finding another tenant. She testified that she was ill during the time in question.

Appellants requested that the court make a specific finding of fact that there was a failure to mitigate. The court refused to do so, reasoning that at common law a landlord had no duty to find a new tenant and further that this court had not abrogated the common law in this respect. It did, however, recognize that there is a split of authority on this issue.

We do not find the present case a propitious one for determining whether to expand this aspect of contract law into the landlord-tenant relationship.[3] The gist of the duty to mitigate is the unreasonableness of the non-breaching party's actions. Danzas, Ltd. v. National Bank of Alaska, 222 F.Supp. 671, 677 (D.Alaska 1963), modified on other grounds, 226 F.Supp. 928 (D.Alaska 1964); Anchorage Independent School Dist. v. Stephens, 370 P.2d 531, 533 (Alaska 1962); 5 Corbin, Corbin on Contracts § 1039 (1964). It does not appear that Mrs. Fowler's actions were unreasonable in this case.[4] Therefore, even were we to impose the duty to mitigate upon the non-breaching party in landlord-tenant situations, we would not do so here since the record does not indicate that the non-breaching party, Mrs. Fowler, acted unreasonably.[5] We find no error.

Affirmed.

---

3. We note that this court has already expanded another doctrine from the law of contracts, that of frustration of purpose, into this area. Jones v. Fuller-Garvey Corp., 386 P.2d 838 (Alaska 1963).

4. Jess Fowler was a named plaintiff to this lawsuit. However, the evidence discloses no participation by him in the lease transaction beyond the appearance of his signature upon the lease document. We therefore treat Mrs. Fowler as the sole landlord for the purpose of deciding this issue.

5. Neither need we decide which party must shoulder the burden of proof on this issue. It is clear from the record that evidence produced by Mrs. Fowler at trial was sufficient for the court to find that her actions were not unreasonable. Nor did the defendants produce enough evidence to the contrary to necessitate a reversal.