Velma M. DAWSON, Appellant,

v.

Angela TEMANSON and Ken Garrison, Appellees.

No. S–10774.

Supreme Court of Alaska.

Feb. 25, 2005.

---

**31.** *Id.*

**32.** AS 45.02.607(a)-(b), (d); AS 45.02.709(a)(1).

J. Kate Burkhart and Mark Regan, Juneau, and Andrew Harrington, Fairbanks, Alaska Legal Services Corporation, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

After prolonged litigation in two lawsuits, a residential landlord successfully evicted tenants from the basement apartment in her home and was awarded damages against them. When she moved for attorney's fees, the superior court adopted the full, reasonable attorney's fees standard, but awarded her fees of only $750. We conclude that the court correctly adopted the full, reasonable attorney's fees standard for awards under AS 34.03.350. But because the reasons given for the award do not adequately explain why awarding less than fifteen percent of the fees the landlord incurred in the second lawsuit satisfied the full, reasonable standard under the circumstances, we hold that it was an abuse of discretion to award the prevailing party only $750. We therefore vacate the award and remand.

## II. FACTS AND PROCEEDINGS

Velma Dawson owned and lived in a home on Glacier Highway in Juneau. Angela Temanson and Ken Garrison rented a basement apartment in her home, beginning with a lease starting on or about July 3, 2000. After the lease period ended, the tenancy became month-to-month.

Dawson decided to renovate and sell her home. On September 27, 2001 she sent Temanson and Garrison a "Notice to Quit and Termination of Rental Agreement" by certified mail. The "Notice to Quit and Termination of Rental Agreement" was prepared by Dawson's attorney and informed Temanson and Garrison that Dawson had elected to terminate the month-to-month tenancy and that the tenants were required to quit and surrender possession on or before November 5, 2001. Temanson and Garrison denied ever

Z. Kent Sullivan, Baxter Bruce Sullivan P.C., Juneau, for Appellant.

receiving the notice. The postal service marked the certified envelope as "unclaimed." Dawson alleged that, in addition to sending the notice by certified mail, she delivered a handwritten notice of termination of tenancy (advising the tenants that they had until November 4, 2001 to vacate the premises) to Garrison on October 5, 2001. Garrison denied that Dawson delivered that notice. The tenants did not move out.

On November 8, 2001 Dawson filed a complaint for possession and damages against the tenants. This was Case No. 1JU–01–1567 CI. Temanson and Garrison answered through counsel, denying that Dawson was entitled to possession, raising affirmative defenses alleging retaliation and breach of good faith, and asserting counterclaims alleging retaliation, unlawful ouster, unlawful diminution of services, abuse of access, and violation of the Alaska Human Rights Act. The forcible entry and detainer (FED) hearing took place November 16 before Magistrate J.W. Sivertsen, Jr. Both sides had counsel.

Magistrate Sivertsen concluded that eviction could not proceed "at this time" because neither the unclaimed certified envelope nor the hand-delivered, handwritten notice satisfied the notice requirements of AS 34.03.290 and AS 09.45.100. He nonetheless retained jurisdiction to decide the eviction and damages claims at a future date.[1] Dawson commenced an appeal in the superior court from the magistrate's ruling on possession and at about the same time sent the tenants another notice of termination of tenancy and notice to quit.[2] Her appeal was Case No. 1JU–01–1619 CI. Dawson also filed motions seeking expedited consideration of her appeal and consideration of new evidence regarding service of the notice.

On January 7, 2002 Dawson commenced a new proceeding, Case No. 1JU–02–0008 CI, by filing another complaint for possession and damages. A trial for possession in this case took place on January 18, 2002. Following trial, Superior Court Judge Patricia A. Collins entered partial judgment for Dawson, awarding her sole possession of the property, requiring appellees to vacate the apartment, and reserving damages and attorney's fees issues for the future. The superior court also entered an order dismissing the interlocutory appeal of the possession issue in Case No. 1JU–01–1567 CI as moot. The court later held that given the "chain of proceedings and notices" between the first FED action and the January hearing, any alleged defects in the notice to the tenants had been cured.

On May 24, 2002 the superior court conducted the damages trial. The tenants had withdrawn their counterclaims before trial.[3] Following trial, the superior court awarded Dawson damages of $1,112.45. Dawson moved for an award of attorney's fees totaling $15,417. Her attorney's supporting affidavit and billing statements described the fees she had incurred. On August 11, 2002, the superior court awarded Dawson attorney's fees of $750. The judgment for Dawson incorporated that award.

Dawson appeals the attorney's fees award, arguing that the superior court improperly limited the award to only $750.

## III. DISCUSSION

### A. Standard of Review

■ We ordinarily review awards of attorney's fees for an abuse of discretion,[4] but

---

1. The remaining aspects of Dawson's original proceeding (Case No. 1JU–01–1567 CI) were later transferred to the superior court and consolidated with Dawson's second proceeding (Case No. 1JU–02–0008 CI).

2. Because the November order did not finally resolve all claims raised in the complaint and answer and because it apparently did not comply with Alaska Civil Rule 54(b), Dawson's November 2001 appeal was premature. The superior court treated the appeal as seeking interlocutory review and gave it expedited consideration. Dawson's appellate brief to us refers to the appeal as a petition for review. Had the judgment

been final and disposed of all her claims, Dawson would have been required to appeal to prevent res judicata from barring subsequent litigation of her damages claim.

3. The tenants' counterclaims had been consolidated with Case No. 1JU–02–0008 CI for trial. Before the tenants dropped their claims, Dawson's attorney appears to have spent billable time preparing to respond to the counterclaims.

4. *City of Kodiak v. Samaniego,* 83 P.3d 1077, 1082 (Alaska 2004); *Sisters of Providence in Washington v. A.A. Pain Clinic, Inc.,* 81 P.3d 989,

we review underlying legal determinations using our independent judgment.[5] We review factual findings for clear error.[6] We apply our independent judgment to issues of statutory construction and will adopt the rule of law most persuasive in light of precedent, reason, and policy.[7]

### B. Number of Cases

■ As a preliminary matter, Dawson argues that the superior court erred in construing her action as "three separate and independent cases" instead of only one. She describes the facts and proceedings below as "inexorably intertwined." Temanson and Garrison argue that the superior court was correct to characterize the litigation as three separate proceedings. They argue that Dawson filed a complaint for possession and damages on November 8, 2001; that she commenced an appeal in November from the decision in that matter; that she commenced a third proceeding after serving a "second" notice of termination of tenancy and a "second" notice to quit;[8] and that the first appeal and second action were ultimately both in front of the same superior court judge. The tenants and the superior court appear to have counted the proceedings commenced by each complaint and the appeal as separate cases.

Whether there were two cases or three would seem to be irrelevant, were it not for some question about how the fees award was calculated, and how it might be calculated on remand. Because the award was meant to exclude services performed before commencement of the new proceeding on January 7, the issue is immaterial if the court on remand adheres to that exclusion. But if the award on remand covers any services performed before January 7, the issue might matter. We therefore briefly address the question.

In our view, the first complaint and the November appeal relating to it should be considered one case, and the second complaint, filed January 7, should be considered to have commenced a second case. Dawson's first complaint for possession and damages involved the legal and factual issues relating to her September 27, 2001 notice sent by certified mail and the October 5, 2001 notice. Her November appeal (or petition for review) from the November order also related to those efforts to terminate.

Her second complaint for possession and damages, filed January 7, involved legal and factual issues that largely related to her November 19, 2001 notice of termination and notice to quit. Some issues were in common. For example, the tenants argued in both cases that a separate notice to quit was required.

Because Dawson prevailed on the possession issue in her second case, the superior court dismissed as moot Dawson's interlocutory appeal of her first case. We therefore consider the litigation below to have constituted two cases—corresponding to the first and second complaints.

### C. The Merits of Dawson's First Case

In discussing the landlord's attorney's fees motion, the superior court reasoned that Dawson "lost and/or would have lost two of the three separate cases that she filed," and therefore declined to award fees with respect to the first action and the associated interlocutory appeal. This conclusion was based in part on the court's agreement with the magistrate and the tenants that the unclaimed notice of termination and notice to quit that Dawson sent by certified mail in September did not satisfy AS 34.03.290(c). The superior court also reasoned that AS 34.03.290(c) requires a separate notice to quit following termination of the tenancy.

Dawson argues that because the notice issues had been mooted, the superior court erred when awarding fees by considering the

---

1007 n. 61 (Alaska 2003); *Feichtinger v. Conant,* 893 P.2d 1266, 1268 (Alaska 1995).

**5.** *Samaniego,* 83 P.3d at 1082; *Matanuska Elec. Ass'n v. Rewire the Bd.,* 36 P.3d 685, 689–90 (Alaska 2001).

**6.** *Silvers v. Silvers,* 999 P.2d 786, 792 (Alaska 2000).

**7.** *Coughlin v. Gov't Employees Ins. Co. (GEICO),* 69 P.3d 986, 988 (Alaska 2003).

**8.** These were the third notices by Dawson's count.

mooted issues. She also addresses the merits of the notice issues, and argues that under Alaska law a landlord can send a notice of termination and a notice to quit together by certified mail and that the notices satisfy AS 34.03.290 and AS 09.45.100 even though they are sent simultaneously. Alaska Statute 34.03.290(b) specifies that a landlord may terminate a month-to-month tenancy "by a written notice given to the [tenant] at least 30 days before the rental due date specified in the notice." Alaska Statute 34.03.290(c) states that if a tenant remains in possession after the termination, the landlord may, after serving a notice to quit, bring an action for possession. Finally, AS 09.45.100(c)(3) provides for service on the tenant of a notice to quit "sent by registered or certified mail." Both Dawson and the tenants rely on AS 09.45.100(c) in arguing how notice to quit must be effected under AS 34.03.290(c).

Dawson argues that the plain meaning of "sent" in AS 09.45.100(c) and the lack of contrary legislative history establish that sending notice by certified mail is sufficient. The tenants respond that the purpose of the statute and basic fairness require that a landlord must establish the tenants' actual receipt or refusal to accept the notice.

Although the notice issues are potentially important to other landlords and tenants, we choose not to decide them in this appeal. The only issues squarely before us concern the attorney's fees award. The court declined to award Dawson fees with respect to legal services concerning the first FED action. Whatever the merits of the notice issues in that case, Dawson was not in fact the prevailing party in that case as to those issues because the superior court dismissed her appeal in that case for mootness and Dawson has not appealed from that dismissal. Nor has she appealed from the judgment that awarded her unpaid rent "for January 1–19, 2002," but no rent for the period November 5 through December 31.

We have sometimes chosen to consider the merits of mooted issues when, to resolve an attorney's fees dispute, it is necessary to determine who was, or would have been, the "prevailing party." [9] But here there is no genuine dispute about whether Dawson was ultimately the prevailing party in proceedings that she describes on appeal as "inexorably intertwined." The court treated Dawson as the prevailing party who regained possession and recovered damages, and consequently awarded fees to her. The prevailing-party issue is therefore of little or no importance because the important issue here is whether the award was too small. For reasons we discuss in Part III.D, the main question is whether it was an abuse of discretion to award about fifteen percent of the fees incurred from January 7 forward. We therefore see little need to address the merits of the mooted notice issues in this case, and decline to do so.

**D. Reasonableness of Attorney's Fees Award**

■ Dawson argued below that AS 34.03.350 entitled her to an award of full, reasonable attorney's fees from the tenants. The tenants responded that the statute should not be interpreted to call for full, reasonable fees. The superior court held that AS 34.03.350 provides for an award of full, reasonable attorney's fees to the prevailing party in an action under the Alaska Uniform Residential Landlord and Tenant Act (AURLTA), but awarded Dawson fees of $750 although her attorney had asserted that Dawson had incurred fees exceeding $15,000.

Dawson argues on appeal that it was error to fail to award her full, reasonable fees. Garrison and Temanson argue that AS 34.03.350 does not require an award of full, reasonable fees. They did not cross-appeal this legal issue, but they permissibly raise it as an alternative basis for affirming the superior court's fees award.[10]

**9.** *Jerue v. Millett,* 66 P.3d 736, 742 (Alaska 2003) (evaluating success of mooted shareholder derivative suit for purposes of awarding attorney's fees); *State v. Niedermeyer,* 14 P.3d 264, 267 (Alaska 2000) ("[W]e will review an otherwise moot issue to determine who the prevailing party is if such a determination is necessary for purposes of awarding attorney's fees.") (internal quotation marks and citation omitted).

**10.** *See, e.g., Zaverl v. Hanley,* 64 P.3d 809, 819 n. 25 (Alaska 2003) ("We can affirm on alternative grounds apparent from the record."); *Spindle v. Sisters of Providence in Washington,* 61 P.3d 431, 436 (Alaska 2002) ("We are not bound by the trial court's articulated reasoning and can affirm a grant of summary judgment on alternative grounds, considering any matter appearing in the record, even if not considered by the trial

We therefore first consider the standard that applies to Dawson's attorney's fees award. Alaska Statute 34.03.350 provides: "Attorney fees shall be allowed to the prevailing party in any proceeding arising out of this chapter, or a rental agreement." Although we have not previously construed AS 34.03.350, we have interpreted other provisions calling for an award of "reasonable fees" to mean an award of "full reasonable fees."[11]

Had the legislature intended that a prevailing party in a landlord-tenant dispute receive only partial fees, there would have been no reason for the statute to address the topic of awarding fees, because Civil Rule 82 would have been an adequate basis for routine recovery of partial fees by prevailing parties. We therefore read AS 34.03.350 as providing for an award of full, reasonable attorney's fees to the prevailing party. The superior court did not err in so holding.

■ We next consider whether, as Dawson contends, it was an abuse of discretion to award Dawson fees of $750.

■ It is not clear how the superior court calculated the $750 award. It apparently reasoned in part that fees Dawson incurred while litigating possession during the first case were not recoverable from the tenants in the second case, because Dawson was not, or would not have been, the prevailing party. We express no opinion about whether she would have been the prevailing party if her second case had not mooted the first. Daw-

son's procedural difficulties in the first case and her vigorous efforts to defend those steps apparently also contributed to the court's decision to base the fee award exclusively on services performed during the second case. Under the circumstances, we think that was a permissible choice. After the failure of the first proceeding, Dawson chose to attempt an Appellate Rule 204 direct appeal of the interlocutory decision even though the more direct and immediate route to eviction would have been to serve a new notice and initiate a new proceeding.[12] Indeed, that is what Dawson ultimately did when she re-served the tenants in November 2001 and filed a new complaint in January 2002. But in the meantime, she continued to litigate the first case. She asked for expedited appellate review of the FED ruling, moved for consideration of newly discovered evidence under Alaska Civil Rule 60(b) relating to notice issues, gathered and submitted affidavits addressing the notice issues, and briefed the notice issues for the reviewing court. The appeal and the associated motion practice contributed to circuitous and inefficient litigation of the eviction dispute. Dawson thus proceeded on duplicative paths by vigorously attacking the November order at the same time she was initiating a new eviction case. When a party files duplicative cases, one of which renders the other moot, we cannot say that it is an abuse of discretion to deny attorney's fees incurred in prosecuting the mooted case. Having reviewed the time sheets detailing the services performed

court."); *Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002) ("When ruling on a motion for summary judgment, we may consider any argument ascertainable from the record, even if the superior court did not rule on it. We are not bound by the reasoning articulated by the superior court and can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the superior court or the parties.") (internal quotation marks and citations omitted).

11. *See Bobich v. Stewart*, 843 P.2d 1232, 1237 (Alaska 1992) ("[W]hen interpreting a state statute that expressly calls for an award of reasonable attorney's fees to successful plaintiffs, we have held that full fees should be awarded to claimants as long as those fees are reasonable."); *Jackson v. Barbero*, 776 P.2d 786, 788 (Alaska 1989) (construing clause in lease authorizing "reasonable attorney's fees" to mean full reason-

able fees); *Boyd v. Rosson*, 713 P.2d 800, 802 (Alaska 1986), *modified on reh'g*, 727 P.2d 765 (Alaska 1986) (interpreting statute authorizing "a reasonable attorney fee" for foreclosure of liens to provide for full reasonable fees).

12. The direct appeal was also arguably premature, because it appears the November 16 ruling was not a final judgment. We recognize that Dawson potentially faced a procedural quandary. If the November order had been final, an appeal would have been appropriate to preserve her damages claim and to obtain attorney's fees as the prevailing party, and possibly to avoid prejudicing her defense to the tenants' counterclaims, asserted on November 15. Ultimately her unresolved damages claim was transferred to the superior court, and consolidated with the second case. The damages award covered unpaid rent "for January 1–19, 2002" and damage to the apartment.

by Dawson's attorney, we conclude that the superior court did not err in concluding that Dawson excessively litigated what should have been a routine forced eviction.

Nonetheless, the rationale for the $750 award is not obvious, even if the award was permissibly based on fees incurred only in the second case.

After the tenants were evicted and she was awarded damages, Dawson requested $15,417 in attorney's fees. The supporting affidavit of her attorney, Z. Kent Sullivan, asserted that fees were billed at the hourly rate of $150 and that Dawson's attorneys had "reasonably" expended "in excess of 102 hours in review, document preparation, hearing attendance and trial with regard to the present action." The affidavit attached billing statements specifying the services performed and the dates of service. The statements reflect numerous pre-January 7 entries that pertain only to the first case and the associated appeal and motion practice.

The superior court found that Sullivan's hourly rate of $150 was reasonable, but that the hours expended were not reasonable because "remarkable amounts of time were spent on matters that were not complex." The court also noted "the lack of complex fact or law issues, the lack of significant pretrial discovery or motion practice, and the brief length of trial(s)."

We cannot say that a substantial reduction was inappropriate. Nor are we convinced that the court's findings that the issues were not complex and that the services were excessive were clearly erroneous. But several circumstances nonetheless convince us that the $750 award was inadequate.

At the $150 hourly rate approved by the superior court, the award compensated Dawson for only five hours of work by her lawyers. But the January 2002 possession trial and the May 2002 damages trial lasted a total of about 4.5 hours, and additional post-January 7 hearings took about another half an hour of actual court time. It appears

from the billing statements that Dawson's attorney spent significantly more than five hours just preparing for and attending the two trials.[13] Because the trials and hearings themselves required nearly five hours of actual court time, the award failed to compensate Dawson for any necessary preparation before these appearances.

Further, Sullivan's statements describe about thirty-seven billed hours of attorney time for services between January 7, 2002 (when Sullivan drafted and filed the second complaint) and May 24, 2002 (when the damages trial took place). At $150 per hour, the billings reflect about $5,550 attributable to the second case. The $750 award is less than fifteen percent of $5,550.

In prosecuting the second case, Sullivan also had to draft and file a number of documents (including the complaint and proposed orders). The tenants were represented by very able attorneys who vigorously advocated the tenants' position even though the ultimate outcome on the issue of possession, assuming the alleged service and procedural deficiencies were cured, was never in realistic doubt. They raised numerous affirmative defenses. They asserted counterclaims for damages. It was not until shortly before the May 24, 2002 damages trial that they dismissed their counterclaims. Given the need to draft the complaint and the other documents, litigate significant legal issues raised by the tenants, prepare to respond to the counterclaims, prepare for and attend the possession and damages trials, and communicate with court and opposing counsel, the findings do not adequately support the award. They do not demonstrate how, under these circumstances, a reasonable attorney could have successfully litigated the disputed possession and damages issues in the second case without billing more than five hours of attorney time. It is not evident from the findings how $750 could, under the circumstances of this case, be considered a full and reasonable amount.

---

**13.** Sullivan apparently billed over eighteen hours for preparing for and attending these hearings and proceedings; a small portion of that time was for other legal services, such as telephone calls.

## IV. CONCLUSION

We therefore VACATE the award of $750 and REMAND for determination of the full, reasonable attorney's fees.