NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of<br><br>KAY LOUISE ROLLISON | )<br>)  Supreme Court Nos.   S-18902/19131<br>)  (Consolidated)<br>)<br>)  Superior Court No.  3AN-21-02045 PR<br>)<br>)  <u>MEMORANDUM OPINION</u><br>)       <u>AND JUDGMENT</u>*<br>)<br>)  No. 2109 – October 1, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances:  Italia A. Carson, Polaris Law Group, P.C., North Pole, for Appellants.  Nora G. Barlow, Barlow Anderson, LLC, Anchorage, for Appellee.

Before:  Carney, Borghesan, Henderson, and Pate, Justices [Maassen, Chief Justice, not participating], in S-18902; and,

Before:  Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices, in S-19131.

## I.    INTRODUCTION

A landlord passed away in the middle of a one-year lease. Her tenants broke the lease four months before it expired. The tenants paid rent for two additional months after moving out, but then filed a claim against their landlord's estate, arguing

---

\*        Entered under Alaska Appellate Rule 214.

that under the Uniform Residential Landlord and Tenant Act (URLTA), it had failed to take reasonable steps to re-rent the property after they had moved out and that it had willfully[1] failed to return their security deposit in a timely manner. The superior court denied both claims, and awarded full, reasonable attorney's fees to the estate under URLTA. Seeing no error, we affirm the decision of the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    The Tenants Entered Into A One-Year Residential Lease Agreement With Kay Rollison.

In April 2021 Barbara Emerson and Terry Billings (the tenants) agreed to lease one unit of Kay Rollison's Anchorage triplex. The parties executed a formal written lease agreement. The lease agreement provided for a one-year term beginning on April 1, 2021. It established that the monthly rent was $1,900, due on the first day of every month, and payment was to be made to one of Rollison's two checking accounts, or by personal check or cash. The lease also required a $1,250 security deposit.

Less than two weeks after executing the lease, Rollison emailed the tenants and informed them that she had been diagnosed with colon cancer. Then in August, they emailed Rollison to inform her that they were planning to buy a house. The tenants explained that nothing was certain yet, and that they would "keep [Rollison] posted and give [her] as much notice as" they could. Rollison never replied to the email. She died eight days later on August 25, 2021.

Before she died, Rollison executed a witnessed, signed, and notarized will. She named her friend as the executor of her estate, and the Aquarian Foundation as her sole beneficiary. However, after Rollison died, her friend declined to serve as executor. In light of this, Rollison's minister, Erich Rusch, applied to represent the estate in

---

[1]    "We use the American spelling 'willfully' except when quoting URLTA, which uses the British spelling 'wilfully.' " *Dinh v. Raines*, 544 P.3d 1156, 1161 n.1 (Alaska 2024).

September 2021. In addition to being Rollison's minister, Rusch was a representative of the Aquarian Foundation. In his application, Rusch requested that Rollison's will be admitted to informal probate, that he be appointed the personal representative of her estate, and that the court issue letters testamentary to him.

A few months passed between Rusch's September application and his appointment as personal representative in December. During this time the probate court held a hearing to determine the authenticity of Rollison's will. The court ultimately admitted Rollison's will to probate in December and appointed Rusch as the personal representative of her estate; however, the appointment order was not distributed until January 5, 2022. And Rusch did not actually receive the letters testamentary until January 11, 2022.

## B. Rusch Communicated With The Tenants Regarding Their Lease Before He Was Appointed Personal Representative Of The Rollison Estate.

Before Rusch was appointed as personal representative, he began communicating with the tenants regarding their lease. Several days after Rollison died, Rusch met with the tenants in person. Emerson testified that she understood that Rusch was "assuming the role of landlord" in the wake of Rollison's death. But Rusch testified that he did not tell the tenants that he was their new landlord. Rather, he told them that he was Rollison's minister and that he would be "handling her estate."

Then about one month after Rollison died, the tenants emailed Rusch and informed him that they had found a house, and that they would be moving out in mid-November. Rusch replied with a formal letter sent by certified mail. In the letterhead, Rusch indicated that he was the "authorized representative for the Estate of Kay Louise Rollison." The letter conveyed a "friendly reminder" that the tenants' lease did not expire until March 31, 2022, and that "[a]ll terms of the agreement remain[ed] in full force." When later asked about his use of the term "authorized representative" to refer to himself, Rusch admitted that he supposed he had "overstated [his] true authority."

The tenants replied to Rusch's letter with their own. They addressed Rusch as the "[a]uthorized representative for the Estate of Kay Louise Rollison." They informed Rusch that they intended to "move out before the lease expire[d]," and wanted to provide "proper and timely notification" so Rusch would have "the opportunity to find new tenants as soon as possible" and the unit would not be "empty throughout the winter." They also stated that they hoped to have the unit cleaned out and the keys turned over by the first week of November. Then at the end of November the tenants informed Rusch that they had moved out of the unit and that it was clean and ready to be re-rented.

Five days later, Rusch informed the tenants that because he had not yet been given "letters testamentary" by the probate court, he could not re-rent the unit. Nevertheless, Rusch continued to represent on the letterhead of the document that he was the "authorized representative for the Estate of Kay Louise Rollison."

## C. The Tenants Paid Rent For December and January But Then Filed A Claim Against The Estate For Return Of Those Payments.

The tenants paid rent for both December and January. However, they did not pay February's rent. Rather, in early February 2022, they filed a claim against the estate for return of their December and January rent payments. They noted that they had not observed a "for rent" sign on the triplex, or any other listing on the internet or local advertising. The tenants argued that the unit should therefore be considered abandoned as of November 2021 and that the tenants' rent payments for December and January should be returned.

In early April 2022 Rusch mailed the tenants a letter, stating that the "Aquarian Foundation" had mailed them a check in the amount of $1,250 on March 31, 2022 so as to return their security deposit. That same day, Rusch denied the tenants' claim against the estate for return of December and January's rent. He reiterated that he did not receive letters testamentary appointing him as personal representative of the

estate until January 11, 2022, and so could not have re-rented the property for the months of December and January.

In May 2022 the tenants filed a formal petition for allowance against the estate. They argued that under URLTA, they were entitled to the return of their December and January rent payments and statutory damages for late return of the security deposit. The estate responded that it was reasonable to keep the security deposit until the lease terminated in March 2022. And it argued that Rusch could not be held accountable for what he legally was not permitted to do — re-rent the property before he was appointed personal representative.

### D. The Superior Court Denied The Tenants' Claims Under URLTA And Awarded Full, Reasonable Attorney's Fees To the Estate.

The superior court held a three-day evidentiary hearing between December 2022 and March 2023. In September 2023 the court denied the tenants' claim against the estate. On the issue of the return of December and January rents, the court focused its analysis on whether Rusch had a duty to act on behalf of the estate prior to appointment. The court found that because Rusch was not yet appointed as personal representative, and because the tenants broke their lease before a representative was appointed, it was not unreasonable to fail to re-rent the property in December and January.

The court also rejected the tenants' claim that Rusch had "willfully" withheld their security deposit. The court found that there was reasonable confusion about when the tenants' lease terminated, because they had signed a year-long lease and then moved out early. The court concluded that Rusch's belief that the lease did not terminate until March 31, 2022 was reasonable, and his return of the deposit on that day demonstrated that it was not his "conscious intent" to unlawfully withhold the deposit.

After the superior court denied the tenants' claim against the estate, the estate moved for attorney's fees under URLTA,[2] which unlike Alaska Civil Rule 82,[3] allows a party prevailing in an action under URLTA to recover its "full, reasonable" attorney's fees.[4] The estate sought an award of $19,530 — the full amount of fees associated with defending against the tenants' action. The tenants opposed. They argued that a provision under Alaska's probate code, allowing a personal representative to recover expenses from the estate in estate litigation, should control.[5]

The superior court granted the estate's motion for full fees under URLTA, holding that the URLTA fee statute, not the probate code provision cited by the tenants, controlled its award. After subtracting several hours for work unrelated to the matter on which the estate prevailed, the court ordered a modified fee award of $16,660 to the estate.

The tenants appeal both the superior court's denial of their claims under URLTA, and the court's attorney's fee award. We heard the tenants' appeals of the superior court's denial of their URLTA claims and of its attorney fee award separately; however, we have consolidated the two appeals for purposes of communicating our decisions.

---

[2]   AS 34.03.350.

[3]   *See* Alaska R. Civ. P. 82(a)-(b) (providing for partial fee recovery for "prevailing party" in all civil cases).

[4]   *See Dawson v. Temanson*, 107 P.3d 892, 897 (Alaska 2005) (holding that AS 34.03.350 goes beyond Alaska Civil Rule 82's partial fee award and provides for "an award of full, reasonable attorney's fees to the prevailing party" in action brought under URLTA).

[5]   *See* AS 13.16.435.

## III.  STANDARD OF REVIEW

" 'Leases are contracts,' so we review their interpretation de novo with respect to questions of law."[6] We review the superior court's interpretation of a statute, including provisions of URLTA, de novo.[7] In doing so, we look to "the language of the statute, the legislative history, and the legislative purpose behind the statute."[8]

"The reasonableness of a plaintiff's effort to mitigate damages is normally a question for the trier of fact."[9] The superior court's findings of fact are reviewed for clear error.[10] "A finding of fact is clearly erroneous if it leaves the court with a 'definite and firm conviction on the entire record that a mistake has been made.' "[11]

We review an award of attorney's fees for abuse of discretion.[12] And we review legal issues, such as the "appropriate choice of law," using our independent judgment and "will adopt the rule of law most persuasive in light of precedent, reason, and policy."[13]

---

[6]  *Dinh v. Raines*, 544 P.3d 1156, 1165 (Alaska 2024) (quoting *Rockstad v. Glob. Fin. & Inv. Co.*, 41 P.3d 583, 586 (Alaska 2002)).

[7]  *Id.* (citing *Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1093 (Alaska 2023)).

[8]  *Id.* (quoting *Guilford*, 522 P.3d at 1093).

[9]  *Beaux v. Jacob*, 30 P.3d 90, 96 n.7 (Alaska 2001) (citing *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991)).

[10]  *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 392 (Alaska 2017) (citing *Lentine v. State*, 282 P.3d 369, 375-76 (Alaska 2012)).

[11]  *N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005) (quoting *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

[12]  *Dawson v. Temanson*, 107 P.3d 892, 894 (Alaska 2005).

[13]  *Kaiser-Francis Oil Co. v. Deutsche Oel & Gas., S.A.*, 566 P.3d 252, 257 (Alaska 2025) (first quoting *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 362 (Alaska 2015); and then quoting *Ito v. Copper River Native Ass'n*, 547 P.3d 1003, 1009 (Alaska 2024)).

## IV.  DISCUSSION

### A.  The Probate Code And URLTA

We must consider two separate bodies of law in deciding this matter.  The first is the Alaska probate code.[14]  It provides that when a person dies, that person's real property "devolves to the persons to whom it is devised," meaning that property goes to the beneficiary named in a decedent's will.[15]  However, a will must be declared valid before devised property may be transferred to the beneficiary.[16]  And even when a decedent's will is declared valid, the estate must still be administered, which requires the appointment of a personal representative.[17]  This process necessarily takes time.  For the purposes of this decision, we will refer to the period of time between a person's death and the appointment of a personal representative as the "probate gap" period.

The second body of law at issue here is URLTA.[18]  URLTA requires landlords to act in good faith and to mitigate damages,[19] and imposes on landlords a specific duty to "make reasonable efforts" to re-rent an abandoned dwelling unit.[20]  The common thread underpinning both of these statutory requirements is fairly straightforward:  a landlord must act reasonably to mitigate damages if tenants break their lease.[21]  Additionally, URLTA provides the procedure by which a landlord must return a tenant's security deposit, and outlines damages available to the tenant in the

---

[14]  AS 13.16.005-.705.

[15]  AS 13.16.005.

[16]  AS 13.16.010.

[17]  AS 13.16.015.

[18]  AS 34.03.010-.380.

[19]  AS 34.03.320.

[20]  AS 34.03.230(c).

[21]  *See Coffin v. Fowler*, 483 P.2d 693, 696 (Alaska 1971) (holding "[t]he gist of the duty to mitigate is the unreasonableness of the non-breaching party's actions").

event the landlord "wilfully" fails to return the security deposit within the timeframe required.[22]

B.    **The Superior Court Did Not Clearly Err When It Found That The Estate's Failure To Re-Rent In December And January Was Reasonable.**

The tenants argue that because Rusch held himself out as the estate's personal representative before he was ever appointed, he assumed the estate's duty to mitigate its damages during the probate gap period. The estate does not respond directly to this argument. Instead, it attempts to reframe the determinative issue as whether a personal representative has a duty to act on behalf of an estate prior to appointment. But we view the central issue differently. While by his own admission Rusch overstated his authority on behalf of the estate during the probate gap period, his conduct prior to appointment — to the extent it is actionable — is attributable to him, not to the estate. Therefore, the relevant inquiry here is not whether Rusch assumed the estate's duty to mitigate. Rather, the relevant inquiry is whether the estate's failure to re-rent during the probate gap period was reasonable.

Here, the superior court noted that the process of appointing a personal representative for Rollison's estate was complicated because the person she had nominated declined to serve in that capacity. The court found that Rusch shortly thereafter filed a petition for appointment, that he followed through with the hearing process prescribed by the probate master, and that until that process was resolved there was no certainty about who was able to represent the estate. The court found that given this context, particularly where the tenants "intentionally broke the lease shortly after the death of their landlord," the failure to re-rent "can hardly be characterized as unreasonable."

---

[22]    AS 34.03.070(b), (d), (g).

Given the context, we cannot say that the superior court clearly erred. Kay Rollison died at the end of August 2021, the executor named in her will declined to serve, and therefore a personal representative had to be appointed to administer her estate. It is not unreasonable for such a process to take nearly five months, and not unreasonable for the estate to fail to re-rent a property for two months during this period.

We note that our holding today is not one that an estate's failure to re-rent will always be reasonable where a personal representative has not yet been appointed. "The gist of the duty to mitigate" rests on the reasonableness or lack thereof of the nonbreaching party's actions.[23] There may be instances where it takes an unreasonably long period of time to appoint a personal representative, and where this delay is due to the estate's negligence, mistake, delay, or other deficiency. In such a situation, the estate's failure to mitigate may not be reasonable. But based on the record before us, the superior court did not clearly err when it decided that the failure to re-rent for December and January was reasonable.

### C. The Superior Court Did Not Clearly Err When It Found That The Estate Did Not "Wilfully" Fail To Return The Tenants' Security Deposit.

URLTA requires a landlord to return a tenant's security deposit "within 30 days after the tenancy is terminated, possession is delivered by the tenant, or the landlord becomes aware that the dwelling unit is abandoned."[24] If a landlord "wilfully fails" to comply with this requirement, then the tenant "may recover an amount not to exceed twice the actual amount withheld."[25]

Here, the superior court found that "Mr. Rusch believed, rightly or wrongly, that the tenancy terminated on March 31, 2022," as provided in the tenants'

---

[23] *Coffin*, 483 P.2d at 696.

[24] AS 34.03.070(g).

[25] AS 34.03.070(d).

lease agreement. The superior court found that because the tenants had signed a one-year lease, and because they had not legally "abandoned" the premises, Rusch did not "wilfully fail[]"[26] to return their deposit by waiting until the lease expired to return it.

Because Alaska's URLTA, which is based on the 1972 version of the model code, does not define the term "wilfully,"[27] the superior court looked to the definition of willfulness used in the context of sanctioning parties or attorneys for violations of discovery rules: "Willfulness, in the sense of a conscious intent to impede . . . , and not mere delay, inability or good faith resistance, must be demonstrated before sanctions may be imposed."[28]

Here, the tenants attempt to demonstrate that Rusch "consciously intended" to delay return of their security deposit. The tenants point to half of a sentence within Rusch's denial of their claim against the estate that reads: "LEASE was terminated on February 3, 2022." The tenants argue that this amounts to a concession by Rusch that the lease "terminated" before it expired under the original agreement. But the tenants' quotation of Rusch's statement disallowing their claim is incomplete, and their characterization of the statement is incorrect. The full sentence they have excerpted reads: "[T]he Estate's interest in [the tenants'] BROKEN LEASE was terminated on February 3, 2022." This is quite different from an admission that the lease itself terminated, because on February 3, Rusch deeded the leased property to the Aquarian Foundation. When read in context, then, Rusch's statement is better understood to mean that the lease was still in effect, and that the estate's interest in it had merely been extinguished by the transfer. In light of the full record, we conclude

---

[26]   *Id.*

[27]   AS 34.03.360; UNIF. RESIDENTIAL LANDLORD & TENANT ACT § 1.301 (UNIF. L. COMM'N 1972).

[28]   *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981).

the superior court did not clearly err when it found that Rusch did not willfully withhold the tenants' security deposit.

**D.      The Superior Court Did Not Err In Awarding The Estate Its Full, Reasonable Attorney's Fees Under URLTA.**

The URLTA fee statute provides that, "[a]ttorney's fees shall be allowed to the prevailing party in any proceeding arising out of this chapter or a rental agreement."[29] We have held that this means a prevailing party may recover its "full, reasonable" attorney's fees in an action brought under URLTA.[30] Meanwhile, the tenants argue that a particular fee statute under Alaska's probate code, AS 13.16.435, should apply. That statute provides that "[i]f any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred."[31]

The tenants first contend that because they brought their action as a creditor's claim against the estate pursuant to the procedure set out in the probate code,[32] the probate fee statute should apply rather than URLTA's fee statute. But the tenants' position is inconsistent with the plain language of AS 13.16.435, and is not supported by our precedent. The text of AS 13.16.435 makes clear that it applies only when a "*personal representative or person nominated as personal representative defends or prosecutes*" an action and is attempting to recover fees.[33] The statute does nothing to limit an *estate's* recovery from a third party that engages it in litigation.

---

[29]      AS 34.03.350.

[30]      *Dawson v. Temanson*, 107 P.3d 892, 897 (Alaska 2005).

[31]      AS 13.16.435.

[32]      *See* AS 13.16.450-.530 (providing procedure for creditors to file claims against estate).

[33]      AS 13.16.435 (emphasis added).

Here, the tenants filed a claim against the estate, not against Rusch individually, and it was the estate that prevailed in defending the tenants' action and that was entitled to recover fees.

Moreover, we have only ever applied AS 13.16.435 where a personal representative is engaged in core estate litigation.[34] This is consistent with the Commentary to the Uniform Probate Code, which contemplates that the corresponding provision under the Uniform Code applies only to core probate matters such as will contests.[35] Here, the tenants' substantive claims did not address probate matters. The tenants' claims arose entirely under URLTA. The substantive law to be applied in deciding the tenants' claims was URLTA. This would be so regardless of how the tenants presented their claims against the estate.[36]

Finally, the tenants argue that the superior court's decision was "grounded in the [Uniform Probate Code] not URLTA." But this position mischaracterizes the superior court's decision. While the superior court considered whether Rusch had a duty to re-rent the property prior to his appointment as personal representative, the focus of the court's analysis was on the rights, responsibilities, and reasonableness of the

---

[34] *See Enders v. Parker*, 66 P.3d 11, 13 (Alaska 2003) (holding AS 13.16.435 applied where one nominated representative prevails in probating instrument nominating them over another instrument); *Dieringer v. Martin*, 187 P.3d 468, 476 (Alaska 2008) (stating AS 13.16.435 allows personal representative "who has prosecuted or defended *a probate action* in good faith is entitled to recover all necessary expenses" (emphasis added) (quoting *Enders*, 66 P.3d at 14)).

[35] UNIF. PROB. CODE § 3-720 cmt. (UNIF. L. COMM'N 2019) (discussing application of section in instances where "executor of one instrument seeks to contest the probate of another instrument"); *see In re Est. of Baker*, 386 P.3d 1228, 1233 (Alaska 2016) (explaining that in 1972 "Alaska adopted the Uniform Probate Code (UPC) in near-entirety" and that "commentary from the UPC is thus instructive in interpreting the Alaska probate statutes").

[36] *See* AS 13.16.465 (outlining manners of presentation of claims against estates).

parties under URLTA. In short, the superior court did not err in awarding fees to the estate under URLTA.[37]

## V.    CONCLUSION

We AFFIRM the superior court's denial of the tenants' claims and award of full, reasonable attorney's fees to the estate.

---

[37] We also reject tenants' position that in the alternative, Alaska Civil Rule 82 should supplant the URLTA fee statute. This argument fails to recognize that "Rule 82 does not apply when fee shifting is 'otherwise provided by law.' " *State, Off. of Pub. Advoc. v. Est. of Jean R.*, 371 P.3d 614, 623 (Alaska 2016) (quoting Alaska R. Civ. P. 82(a)).