*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

STATE OF ALASKA, OFFICE OF          )
PUBLIC ADVOCACY, OFFICE OF          )          Supreme Court Nos. S-15326/15356
ELDER FRAUD & ASSISTANCE,           )
                                    )          Superior Court No. 1JU-12-00179 PR
                Appellant and       )
                Cross-Appellee,     )          O P I N I O N
                                    )
        v.                          )          No. 7098 – April 22, 2016
                                    )
ESTATE OF JEAN R., Deceased,        )
and SIDNEY F.,                      )
                                    )
                Appellees and       )
                Cross-Appellants.   )
_____)

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Ruth Botstein and Dario Borghesan, Assistant Attorneys General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellant/Cross-Appellee. Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellees/Cross-Appellants. Deborah A. Holbrook, Juneau, Co-Counsel for Appellee/Cross-Appellant Sidney F.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

# I.    INTRODUCTION

The State Office of Public Advocacy (OPA) filed a petition for an ex parte protective order on behalf of an elderly woman against her adult daughter and caregiver, after receiving allegations of financial abuse made by the elderly woman's other family members.  The superior court found those allegations to be unfounded and denied the protective order.   The elderly woman's other daughter had previously initiated a conservatorship proceeding, in which the State then participated — in support of the conservatorship — after the denial of the protective order.    Ultimately the conservatorship case was settled through mediation.  The elderly woman's estate and the caregiver daughter sought attorney's fees against the State in connection with both the protective order and conservatorship proceedings.

The superior court awarded full reasonable fees arising from the denial of the protective order, finding that OPA's protective order petition was brought without "just cause," under the fee-shifting provision of AS 13.26.131(d).  The superior court declined to award attorney's fees arising from the proceeding to establish a conservatorship because the State had not "initiated" the conservatorship proceeding as required for fees under AS 13.26.131(d).  The State appeals the first award, and the caregiver daughter and the estate of the woman, who is now deceased, cross-appeal the denial of the second award.

But we conclude that AS 13.26.131 does not apply to elder fraud protective order proceedings; nor does Alaska Civil Rule 82 apply.  Instead, AS 44.21.415 sets up a cost-recovery mechanism that does not allow private parties to recover attorney's fees against the State in such proceedings.  So we vacate the superior court's fee award in the elder fraud protective order proceeding.  And because the State did not initiate the conservatorship proceeding here, no attorney's fees are available against the State in that

proceeding. We therefore affirm the superior court's denial of fees in connection with the conservatorship proceeding.

## II. FACTS AND PROCEEDINGS

When this case first arose in 2012, 92-year-old Jean R.[1] lived in Juneau with her 55-year-old daughter Sidney F., who served as her caregiver. Sidney had moved from Anchorage to Juneau in 2004 to care for her mother and father. In 2009 her parents requested that Sidney quit her job to provide full-time care, and Sidney did so in April 2010. Later that year Jean was diagnosed with dementia, and in October 2010 Jean's husband (Sidney's father) died. Sidney continued to live with her mother full time, providing care and holding a power of attorney authorizing her to manage all of Jean's personal affairs. This case arises out of allegations about Sidney's expenditures raised by two of Jean's other children, Shelley and Geoffrey, who lived outside of Alaska.

In July 2012 Shelley petitioned to establish a conservatorship for her mother, alleging that Sidney was wasting and dissipating Jean's money and assets without benefit to Jean, and that Sidney was financially exploiting Jean. Shelley sought "a third party to serve as a full guardian with the powers of a conservator to protect the rights and well-being of [Jean]." Through this action the Office of Elder Fraud and Assistance, a section of OPA, learned of Shelley's allegations about Sidney's conduct.

In August 2012 OPA filed an ex parte petition for an elder fraud protective order under AS 13.26.207-.208 to protect Jean from alleged financial abuse by Sidney. Prior to filing the petition, OPA examined Jean's bank records and other financial documents, which largely correlated with the allegations made by Shelley. OPA also

---

[1] We use initials in lieu of the parties' last names to protect the family's privacy.

interviewed Shelley and Geoffrey. But OPA evidently did not interview Sidney or Jean, even though it knew that they were both already aware of the allegations of fraud because similar allegations had been made in Shelley's conservatorship petition.

In its petition OPA asserted that ownership of Jean's home had been transferred to Sidney; that Jean's bank accounts had been overdrawn by $2,623 between January and August of 2012; that large expenditures had been made for the sole benefit of Sidney, including airline tickets to Seattle and Minnesota, supplies used to repair a trailer for Sidney's boyfriend, and veterinarian bills for Sidney's pet; and that Sidney had generated "inordinately high" grocery bills. OPA estimated the value at risk to be $54,000 per year and declared the risk to be "immediate or urgent," citing recent overdrafts and checks made out to Sidney from Jean's bank account totaling $1,500. OPA requested that the court limit Sidney's powers of attorney to medical decisions; that housing decisions be shared between Sidney, Shelley, and Geoffrey; and that a temporary six-month conservatorship be established to handle all financial matters following the initial 20-day ex parte protective period.

Jean received a copy of OPA's protective order petition the day after it was filed, and she quickly filed a brief opposing the petition.[2] She explained that the home had been deeded to Sidney in order to help secure additional government assistance for Jean in her old age. She also "dispute[d] the factual basis" of the allegations relating to the airplane tickets, trailer repair, and veterinarian bills. She maintained that she was "well taken care of" and that no financial abuse had taken place.

The superior court denied the ex parte petition three days after it was filed. The court briefly explained that it reached this decision because it "d[id] not find that

---

[2]     It does not appear from the record that Sidney, the respondent, received a copy of the ex parte petition or filed a response to it.

there ha[d] been a showing of probable cause" demonstrating that an ex parte order was necessary to prevent fraud by Sidney against Jean. But the superior court indicated that it would convert OPA's ex parte petition into a petition for a six-month protective order under AS 13.26.208.[3] So OPA continued to proceed with this petition for a six-month protective order, even after the court's denial of the ex parte petition.

The superior court consolidated OPA's ongoing protective order petition and the earlier conservatorship petition filed by Shelley, and it scheduled an evidentiary hearing in September 2012. At that hearing, the court heard testimony that the home was transferred on advice of counsel; that the alleged flight to Minnesota by Sidney and her boyfriend was in fact a trip to Juneau that Shelley took to help care for Jean; that Sidney had reimbursed money to her mother's account for a flight she had taken to Seattle to obtain medical treatment; and that the money spent on Sidney's boyfriend's trailer was actually compensation in exchange for re-roofing and painting Jean's house. The court also heard testimony from Sidney explaining that the money she spent and the checks she drew from Jean's account were compensation under an agreement reached between Sidney and her parents before Sidney quit her job and became their full-time caregiver.

---

[3]     Although the superior court stated that it would consider "whether to issue a 6-month order under AS 13.26.209," we assume it intended to refer to a temporary protective order as defined under AS 13.26.208. We note that AS 13.26.209 deals with modifications to existing protective orders, while AS 13.26.208 provides for the conversion of a 20-day ex parte protective order into a six-month temporary protective order. AS 13.26.208 provides, in part: "On application filed with the court before the expiration of a 20-day ex parte protective order issued under AS 13.26.207, the court shall schedule a hearing on whether to convert the protective order to a temporary order effective for up to six months." Briefing from OPA, which focuses on AS 13.26.207-.208, confirms that these were the provisions under which OPA sought a protective order here.

At the end of the hearing, the superior court entered an oral order denying OPA's petition for an elder fraud protective order. The court credited Jean's and Sidney's explanations for the expenditures OPA had challenged, explaining that it found Jean's and Sidney's testimony more credible than the testimony from Jean's other children and OPA's staff. The superior court thus found that OPA had failed to demonstrate fraud by a preponderance of the evidence and had not made "any showing that there [had] been fraud in this case." The court allowed that a more formalized compensation arrangement might have been better but noted that it did not find the current arrangement to be exploitation, and that it was hard to understand "how one gets to [the] place where it is felt to be exploitation." The superior court therefore denied OPA's petition for an elder fraud protective order. The court allowed litigation of the conservatorship issue to continue, however.

After the superior court's ruling, Sidney filed a motion seeking an award of $14,025 for attorney's fees and costs against OPA. Jean moved for a separate attorney's fees award against OPA for $8,607.75. Sidney alleged that a fee award was justified under Alaska Civil Rule 82, the standard fee-shifting scheme for civil cases; AS 13.26.131, the fee-shifting statute for guardianship and conservatorship cases; or AS 13.26.353(c), which provides a cause of action for failure to honor a power of attorney. Jean asserted that AS 13.26.131 was not applicable but that an award was justified under Rule 82 or AS 13.26.353(c). OPA opposed the motions, denying that it had filed its petition for a protective order in bad faith or without just cause.

Meanwhile, the parties continued to litigate the conservatorship petition that Shelley had filed. OPA, participating in this proceeding as an interested party, sought additional discovery and opposed Sidney and Jean's motion for summary judgment. In December the parties settled the remaining issues from the conservatorship petition through the Adult Guardianship Mediation Program. The parties agreed to dismiss the

conservatorship petition with prejudice and agreed to support Jean's wish to remain in her Juneau home until her death. They established a formal compensation scheme for Sidney, and Sidney agreed to make monthly reports to Shelley and Geoffrey about her expenditures as caregiver. Sidney also agreed to put the home up for sale upon Jean's death. Finally, Sidney and Jean agreed not to pursue an attorney's fee award against Shelley or Geoffrey. Sidney and Jean explicitly reserved their right to seek attorney's fees from OPA.

Following the settlement of the conservatorship action, Jean again filed a motion for a fee award against OPA. She argued that OPA's continued litigation of the conservatorship proceeding was "in bad faith, vexatious, frivolous, and without just cause," thereby justifying a fee award. She argued that all factual issues had been resolved by the denial of the protective order and that continuing to litigate the conservatorship petition violated principles of collateral estoppel and res judicata. Sidney moved to join and supplement Jean's motion shortly thereafter. She asserted that the sum of her total incurred fees had risen to $36,195 and reiterated that Civil Rule 82, AS 13.26.131(d) and AS 13.26.353(c) justified a fee award. In response OPA argued that nothing "in the Probate Rules, Title 13, or applicable case law . . . support[s the] view that interested parties are subject to attorney fees under Rule 82" and argued that AS 13.26.353(c) did not apply.

The superior court awarded full reasonable fees against OPA in the elder fraud protective order proceeding, finding that OPA's elder fraud "petition was brought without just cause" because an "objective observer who made reasonable inquiries would [not] conclude that there was just cause for believing that there was fraud or financial exploitation." In fact the superior court found that, far from committing fraud, Sidney had been providing loving care for her mother after quitting her job and moving home at her parents' request. It was evident that the proceedings arising from the allegations

of fraud had cost the family significant time and expense, which the superior court sought to rectify with this award of attorney's fees.

In the conservatorship proceeding, however, the superior court declined to award attorney's fees. There the superior court found that "by continuing to litigate the conservatorship proceeding" filed by the family members, OPA had not "initiated a proceeding that was malicious, frivolous, or without just cause" as required for a fee award under AS 13.26.131(d). OPA appeals the fee award in the protective order action, while Sidney and Jean (now Jean's estate) cross-appeal the denial of fees related to the conservatorship action.

## III.   STANDARD OF REVIEW

Although we review the reasonableness of fee awards for abuse of discretion,[4] we independently review "whether the trial court properly applied the law when awarding attorney's fees."[5] When such an inquiry "rests on a question of statutory interpretation, we apply our independent judgment in interpreting the statute."[6] In doing so, "we look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

---

[4]   *Foster v. Prof'l Guardian Servs. Corp.*, 258 P.3d 102, 107 (Alaska 2011) (citing *DeNardo v. Cutler*, 167 P.3d 674, 677-78 (Alaska 2007)).

[5]   *Baker v. Ryan Air, Inc.*, 345 P.3d 101, 106 (Alaska 2015) (quoting *DeNardo*, 167 P.3d at 677).

[6]   *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (citing *Pouzanova v. Morton*, 327 P.3d 865, 867 (Alaska 2014)) (applying this standard to a question of statutory interpretation on an issue that is normally reviewed for abuse of discretion).

[7]   *In re Protective Proceedings of Vernon H.*, 332 P.3d 565, 572 (Alaska (continued...)

## IV. DISCUSSION

### A. It Was Error To Award Attorney's Fees In The Elder Fraud Proceeding Because Neither AS 13.26.131 Nor Civil Rule 82 Applies.

Alaska Statute 13.26.131(d) provides for fee shifting in guardianship proceedings if the court finds that the proceeding "was malicious, frivolous, or without just cause." The superior court applied this fee-shifting provision to the elder fraud protective proceeding at issue here, interpreting the text of the statute as suggesting that it should apply. Our decision in *In re Vernon H.*, which was decided after the superior court's order in this case, explained that AS 13.26.131(d) applies to conservatorship proceedings as well as guardianship proceedings and that it displaces Civil Rule 82 in both types of proceedings.[8] But we have not yet addressed the question whether our holding in *Vernon H.* also encompasses elder fraud protective order proceedings. We conclude that elder fraud protective order proceedings are subject to a separate cost-recovery scheme that was established with the creation of the Office of Elder Fraud and Assistance, the office that prosecutes elder fraud cases and seeks protective orders on behalf of vulnerable elders. Accordingly, these proceedings are not subject to AS 13.26.131 or Civil Rule 82.

### 1. The fee-shifting provision of AS 13.26.131(d) does not apply to elder fraud protective order proceedings.

Title 13, Chapter 26 of the Alaska Statutes sets up a statutory regime for protective proceedings, including guardianship, conservatorship, and other protective order cases. The set of provisions under which OPA filed its elder fraud petition, AS 13.26.207-.209, was added to this chapter in 2012 in an effort to address the growing

---

[7](...continued)
2014) (quoting *Enders v. Parker*, 66 P.3d 11, 13-14 (Alaska 2003)).

[8]     *Id.* at 577.

problem of fraud against elders in Alaska.[9] These provisions do not contain their own fee-shifting scheme; instead they rely on fee-shifting provisions codified elsewhere in the statutory regime.

The cost-allocation statute applied by the superior court, AS 13.26.131, generally allocates costs in a guardianship or conservatorship proceeding between the petitioner, the respondent, and the State:

> (a) Subject to (d) of this section, the [S]tate shall bear the costs of the visitor and expert appointed under AS 13.26.106(c).

> (b) Subject to (c) and (d) of this section, the respondent shall bear the costs of the attorney appointed under AS 13.26.106(b), of the expert appointed under AS 13.26.109(d), of the guardian ad litem appointed under AS 13.26.025, and of other court and guardianship costs incurred under this chapter.

> (c) The [S]tate shall pay all or part of the costs described in (b) of this section if the court finds that the payment is necessary to prevent the respondent from suffering financial hardship or from becoming dependent upon a government agency or a private person or agency.

The final section of AS 13.26.131 then provides for cost-shifting in certain limited circumstances:

> (d) The court may require the petitioner to pay all or some of the costs described in (a) and (b) of this section if the court finds that the petitioner initiated a proceeding under this chapter that was malicious, frivolous, or without just cause.

---

[9] Ch. 71, § 10, SLA 2012; *see* Minutes, S. Judiciary Comm. Hearing on Senate Bill (S.B.) 86, 27th Leg., 1st Sess. 1:40-1:46 (Feb. 21, 2011) (testimony of Kelly Henriksen, Assistant Att'y Gen.) (describing the problem of elder fraud in Alaska as the motivation for the bill).

Alaska Statute 13.26.131 falls within chapter 13.26, which also includes the protective order provisions of AS 13.26.207-.209 under which OPA filed the elder fraud protective order in this case. And the text of AS 13.26.131(d) suggests that this cost-shifting provision applies to all proceedings "under this chapter." By this logic, the superior court concluded that the cost-shifting provision applied to the protective order proceeding here. Jean's estate urges us to adopt this reasoning as well. But although it is understandable that the superior court focused on the plain text of this provision, our analysis does not end there.

When interpreting a statute, "we begin with the plain meaning of the statutory text."[10] Then "we apply a sliding scale approach, where '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be' " in order for us to conclude that an alternative interpretation of the statute is more appropriate.[11] Here, although the meaning of the phrase "under this chapter" at first appears plain, the text of the other sections within AS 13.26.131 convinces us that the legislature could not have intended for that statute to apply in elder fraud proceedings. Specifically, subsections (a)-(c) of the statute allocate costs between the State and the respondent, but the definition of "respondent" in the elder fraud context is entirely different from the definition in the guardianship or conservatorship context. The guardianship statutes define "respondent" as the person who allegedly needs

---

[10] *Hendricks-Pearce v. State, Dep't of Corr.*, 323 P.3d 30, 35 (Alaska 2014) (citing *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012)).

[11] *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012), *as modified on reh'g* (Apr. 13, 2012) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

protection.[12] But the person who allegedly needs protection is not mentioned as a party in an elder fraud protective order proceeding. Instead, the elder fraud protective order statute refers to the "respondent" as the person who is accused of committing the fraud.[13] It would make little sense for the cost-allocation provisions of AS 13.26.131 to apply equally to both sets of "respondents," because the parties are in entirely different positions with respect to the proceedings.

If we try to harmonize this conflict by applying a uniform definition of "respondent" under AS 13.26.131, it could lead to absurd results. What happens if we try to apply the elder fraud statute's definition of respondent to the guardianship cost statute? Under subsection (b), the accused is then required to pay the costs of appointed counsel, a respondent's expert, a guardian ad litem, and all "other court and guardianship costs incurred under this chapter."[14] The accused respondent must pay these costs, whether innocent or guilty, unless the costs are shifted to the petitioner under the rare circumstances described in subsection (d).[15] On the other hand, under subsection (c) the State may be required to pay any of these costs if such an order is "necessary to prevent the [accused] from suffering financial hardship" or otherwise becoming dependent. Such

---

[12]     AS 13.26.005(11).

[13]     *See* AS 13.26.207(a) ("If the court finds that the [protective order] petition establishes probable cause that the respondent is financially defrauding the petitioner . . . the court shall . . . issue a protective order.").

[14]     AS 13.26.131(b).

[15]     *See* AS 13.26.131(d).

an outcome is entirely inconsistent with the elder fraud statute's goal of protecting the financial well-being of fraud *victims*.[16]

Different problems would arise if we tried to apply the definition of "respondent" from the guardianship cost statute. Under this alternative, the respondent would be the person who allegedly needs protection, that is, the vulnerable adult in a protective order proceeding.[17] Under AS 13.26.131, the vulnerable adult would then be responsible for paying the costs of appointed counsel, a respondent's expert, a guardian ad litem, and all "other court and guardianship costs incurred under this chapter," even though the vulnerable adult is not typically a named party in an elder fraud proceeding.[18] If the vulnerable adult cannot afford to pay these costs, then the State would pay, even if it is not party to the proceeding.[19] The petitioner could be required to pay only if the filing was "malicious, frivolous, or without just cause."[20] In this scenario, the accused would never be required to pay any costs, even if he or she were found guilty of fraud.

Ultimately both of these interpretations could lead to absurd results that would conflict with the purpose of elder fraud proceedings, which is to protect elders against financial abuse.[21] As a rule of statutory interpretation, we "disfavor statutory

---

[16]    AS 13.26.131(c).

[17]    AS 13.26.005(11).

[18]    AS 13.26.131(b).

[19]    AS 13.26.131(c).

[20]    AS 13.26.131(d).

[21]    Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:40-1:46 (Feb. 21, 2011) (testimony of Kelly Henriksen, Assistant Att'y Gen.).

constructions that reach absurd results."[22] Moreover, Alaska Probate Rule 1(e) mandates that any procedure applied to probate proceedings — including the elder fraud protective orders at issue here[23] — "may not . . . interfere with the unique character and purpose of probate proceedings."[24] Thus we conclude that AS 13.26.131, when read as a whole, cannot apply to elder fraud protective order proceedings.

This conclusion is confirmed by the title of AS 13.26.131, which "can be an interpretive tool . . . where legislative meaning is left in doubt."[25] The provision is titled "Costs in guardianship proceedings," as the superior court noted, and indeed most of the costs described in subsections (a) and (b) are unique to guardianship and conservatorship proceedings.[26] It makes sense for AS 13.26.131 to apply to guardianship and conservatorship proceedings but not to elder fraud cases. Guardianship and conservatorship proceedings are closely related: A guardianship covers all aspects of the protected person's legal and financial rights, and a conservatorship involves similar powers but deals only with financial protection. They are often described together in statutory provisions and the probate rules.[27] Elder fraud proceedings, on the other hand,

---

[22]     *See Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1120 (Alaska 2007) .

[23]     *See* Alaska R. Prob. P. 1(b) (governing all proceedings within Title 13 of the Alaska Statutes).

[24]     Alaska R. Prob. P. 1(e).

[25]     *Tweedy v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals*, 332 P.3d 12, 18 (Alaska 2014) (citing *Boyd v. State*, 210 P.3d 1229, 1232 (Alaska 2009)).

[26]     *See In re Protective Proceedings of Vernon H.*, 332 P.3d 565, 577 (Alaska 2014) (concluding that AS 13.26.131(d) applies in conservatorship cases).

[27]     *See, e.g.*, AS 13.26.380 (c)(1) ("The public guardian shall . . . establish and
(continued...)

are more prosecutorial in nature and are targeted at the perpetrator of the fraud rather than the protected person.[28]  We therefore conclude that, while AS 13.26.131 applies to guardianship and conservatorship proceedings, it does not apply to elder fraud proceedings.

### 2.  Alaska Statute 44.21.415 creates a specific cost-recovery scheme for elder fraud proceedings, which displaces Civil Rule 82.

To understand how the legislature intended to allocate costs in elder fraud proceedings, we look to the text and history of the statute that created the Office of Elder Fraud and Assistance ("the Office").  The 2006 enactment of AS 44.21.415 created the Office as a division of OPA to investigate and prosecute elder fraud cases.[29]  The statute contains a cost-recovery provision allowing the Office to collect its litigation costs and fees from the defendant (the person accused of fraud) or from the protected elder when the Office prevails on behalf of the elder:

> Subject to the discretion of the court and standards established in regulation . . . and taking into consideration the financial condition of the parties to a civil suit brought under this section, the office of public advocacy may seek recovery of all or part of litigation costs and fees from any party, including costs incurred during the investigation of the case,

---

[27](...continued)
maintain relationships with governmental, public, and private agencies, institutions, and organizations to assure the most effective guardianship or conservatorship program for each ward and protected person); Alaska R. Prob. P. 14(e) ("Guardianship and conservatorship proceedings may be combined.").

[28]  *See* AS 13.26.207.

[29]  Ch. 64, § 2, SLA 2006.

when the office of public advocacy is found to be a prevailing party after trial or settlement negotiation.[30]

This section also provides that the Office must generally "enter into a fee agreement with a client,"[31] who is defined to be the elder in need of protection.[32] The statute does not provide for any award of attorney's fees *against* OPA.[33]

Although not determinative of the legislature's intent, the regulation implementing this statute further supports our interpretation of this cost-recovery scheme. The regulation clarifies that "if the client prevails, the [Office] will first seek recovery of [its] attorney's fee from the defendant" and then, "if the defendant is unable to satisfy the award of the [Office's] attorney's fee, the [Office] will next seek recovery from the client [the protected elder]."[34] Like the statute itself, the regulation contains no provision for a fee award against the Office even if the Office does not prevail in the case.[35]

Thus, this statute sets up a cost-recovery scheme that allows OPA to recover its costs first from the perpetrator of the fraud and then from the protected person who benefited from the elder fraud proceeding. And although the legislature contemplated that the Office might not always prevail in the elder fraud proceedings it

---

[30]    AS 44.21.415(e).

[31]    *Id.*

[32]    2 Alaska Administrative Code (AAC) 60.390.

[33]    AS 44.21.415(e).

[34]    2 AAC 60.310(1). The regulation also suggests that Rule 82 might apply *in addition to* the cost-recovery scheme described in AS 44.21.415(e), but we conclude that the legislature intended for this statutory cost-recovery scheme to displace Rule 82, as discussed further below. *See infra* pp. 20-23.

[35]    2 AAC 60.310(2).

initiated,[36] the legislature nonetheless chose not to allow other parties to recover attorney's fees from the Office. This outcome is consistent with the legislative history surrounding the passage of AS 44.21.415, which expressed concern with keeping the Office's costs low. For instance, one legislator inquired about how to make the Office as "efficient and effective" as possible and noted that questions regarding "who will be responsible and how the costs will be borne" were important to address in crafting the bill.[37] Similarly, the OPA director's testimony before the legislature called attention to the "conservative fiscal note" on the bill, seeming to indicate that the creation of this new Office would not raise OPA's costs significantly.[38] And the OPA director specifically suggested adding a cost-recovery mechanism to keep the Office's costs low.[39] In response to this request, legislators drafted an amendment that ultimately created the cost-recovery provision contained in the final statute.[40] We recognize that this outcome may appear harsh in cases where the Office does not prevail and the court finds that no fraud occurred, leaving the accused and sometimes the protected person — who was not

---

[36] *See* AS 44.21.415(e) (providing for cost recovery only "when the [Office] is found to be a prevailing party").

[37] Minutes, H. State Affairs Comm. Hearing on House Bill (H.B.) 399, 24th Leg., 2d Sess. 8:39-8:44 (Feb. 7, 2006) (testimony of Rep. Max Gruenberg).

[38] Minutes, H. Finance Comm. Hearing on H.B. 399, 24th Leg., 2d Sess. 9:25-9:34 (Mar. 7, 2006) (testimony of Josh Fink, Director, OPA).

[39] Minutes, H. State Affairs Comm. Hearing on H.B. 399, 24th Leg., 2d Sess. 8:30-8:31 (Feb. 7, 2006) (testimony of Josh Fink, Director, OPA) ("The committee may want to consider if we litigate on behalf of individuals that there'd be some mechanism by which, if we were successful, we could recover our actual costs, if there was not financial hardship on the individual we were litigating for.").

[40] *Compare* H.B. 399, 24th Leg., 2d Sess. (Jan. 27, 2006) (lacking cost-recovery provision), *with* ch. 64, § 2, SLA 2006 (containing cost-recovery provision).

in fact in need of protection — to bear their own costs. But we must also recognize that the legislature evidently trusted the Office to focus its efforts on the most meritorious cases, and it structured the cost-recovery scheme accordingly.

Sidney argues that AS 44.21.415 could not have intended to set up a one-way cost-recovery mechanism. But this is not the only context in which such a mechanism exists. In domestic violence proceedings, for example, the court may require the respondent to pay the petitioner's attorney's fees if a protective order is granted; yet there is no parallel provision allowing the respondent in a domestic violence proceeding to collect attorney's fees from the petitioner if the petitioner does not prevail.[41] The legislative history of the elder fraud protective order provisions indicates that the legislature modeled these provisions on the domestic violence statutes,[42] so it makes sense that the legislature chose to create a similar one-way fee mechanism in elder fraud proceedings.[43]

---

[41] AS 18.66.100(c)(14).

[42] Minutes, H. Finance Comm. Hearing on S.B. 86, 27th Leg., 2d Sess. 1:44-1:48 (Mar. 1, 2012) (testimony of Kelly Henriksen, Assistant Att'y Gen.); Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:35-1:36 (Apr. 11, 2011) (testimony of Sen. Hollis French); Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:53-1:55 (Feb. 21, 2011) (testimony of Kelly Henriksen, Assistant Att'y Gen.).

[43] In bar discipline proceedings, similarly, an attorney is liable for attorney's fees and costs when there is a finding of misconduct. Alaska Bar R. 16(c)(3). But if it is ultimately determined that the attorney did not engage in misconduct, the rule contains no provision that would enable the attorney to recover from the Disciplinary Board any costs or fees incurred in defending against the allegations. *See id.* Thus, far from being an anomaly here, one-way fee schemes are used in several other types of quasi-prosecutorial proceedings.

A number of other states use a similar approach in the elder fraud and elder abuse context. Oregon, for instance, allows the State to recover "costs of investigation and penalties" of up to $25,000 if it prevails in an elder fraud case, but it has no parallel provision allowing cost recovery if the accused prevails.[44] In fact, Oregon law specifically provides civil immunity to "[a]nyone participating in good faith in the making of a report of elder abuse and who has reasonable grounds for making the report."[45] Washington, similarly, provides that "a prevailing plaintiff" in an elder fraud or abuse case "shall be awarded his or her actual damages, together with the costs of the suit, including a reasonable attorneys' fee,"[46] but it makes no provision for cost recovery in the other direction[47] and in fact provides immunity from civil liability for anyone who makes a good-faith report of elder fraud.[48] California uses the same approach, allowing the State to recover costs from the other parties but not allowing these other parties to recover costs from the State if they prevail.[49] So the cost-recovery mechanism described in AS 44.21.415(e) is consistent with the approach used by other states, the approach used in at least one other relevant area of Alaska law, and the intent of the legislature in adopting AS 44.21.415 and creating the Office to prosecute elder fraud cases. For all of these reasons, we conclude that the cost-recovery mechanism of AS 44.21.415(e) applies to elder fraud protective order proceedings brought under AS 13.26.207-.209.

---

[44]    OR. REV. STAT. § 124.125 (2015).

[45]    OR. REV. STAT. § 124.075 (2015).

[46]    WASH. REV. CODE § 74.34.200 (2016).

[47]    *See id.*

[48]    WASH. REV. CODE § 74.34.050 (2016).

[49]    CAL. WELF. & INST. CODE § 15657.5(a) (West 2016).

Having concluded that AS 44.21.415(e) applies to these protective order proceedings, we reason that Civil Rule 82 cannot also apply. First, Rule 82(a) itself dictates that Rule 82 does not apply when fee shifting is "otherwise provided by law." In *Vernon H.*, we concluded that the fee-shifting provision of AS 13.26.131(d) constitutes "a specific statutory scheme that triggers Civil Rule 82(a)'s provision that Civil Rule 82 shall not apply when fee shifting is 'otherwise provided by law.' "[50] Thus we reasoned that AS 13.26.131(d) "entirely displaces Civil Rule 82 in guardianship and conservatorship proceedings."[51] Here, similarly, the cost-recovery mechanism in AS 44.21.415(e) and 2 AAC 60.310 constitutes a "specific statutory scheme" that "entirely displaces" Rule 82 in elder fraud protective order proceedings.

An examination of the Probate Rules leads us to the same conclusion. Probate Rule 1(e) prohibits the application of procedures that would "interfere with the unique character and purpose" of a probate proceeding, including the elder fraud protective proceedings at issue here.[52] As OPA has pointed out, the legislature's purpose in enacting the elder fraud protective order provisions was to enhance OPA's ability to address elder fraud cases in Alaska.[53] The legislature gave OPA multiple tools to achieve

---

[50] *In re Protective Proceedings of Vernon H.*, 332 P.3d 565, 577 (Alaska 2014).

[51] *Id.*

[52] The elder fraud protective order provisions, AS 13.26.207-.209, are governed by the Probate Rules because they fall within Title 13 of the Alaska Statutes. *See* Alaska Rule Prob. P. 1(b) ("These rules govern practice and procedure in the trial courts in all phases of proceedings brought under Title 13 of the Alaska Statutes . . . .").

[53] Ch. 71, § 10, SLA 2012; *see* Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:40-1:46 (Feb. 21, 2011) (testimony of Kelly Henriksen, Assistant Att'y Gen.) (describing the problem of elder fraud in Alaska as the motivation

(continued...)

this goal; the provision for ex parte protective orders, in particular, indicates that the legislature clearly intended to give OPA significant power to address the problem.[54] Because Rule 82 allows an award of attorney's fees to the prevailing party in every civil case,[55] applying Rule 82 to these proceedings would subject the Office to significant liability for attorney's fees. We have concluded in similar contexts that the fear of an adverse award could significantly chill the willingness of a petitioner to commence protective proceedings in the public interest.[56] Here, too, the specter of Rule 82 fees in any case where OPA does not prevail could significantly chill OPA's willingness and ability to pursue cases under the elder fraud provisions. Such a result would undermine the legislature's very purpose in creating this mechanism for addressing elder fraud. In sum, applying Rule 82 to the elder fraud protective order provisions would "interfere with the unique character and purpose" of these proceedings.[57] Probate Rule 1(e) therefore dictates that Rule 82 must not apply here.

---

[53](...continued)
for the bill).

[54]    *See* AS 13.26.207.

[55]    Alaska R. Civ. P. 82(a).

[56]    *See Wetherhorn v. Alaska Psychiatric Inst.*, 167 P.3d 701, 703 (Alaska 2007) (concluding that there is no basis for an attorney's fee award in civil commitment actions); *Cooper v. State*, 638 P.2d 174, 178 (Alaska 1981) (declining to award such fees in CINA cases).

[57]    We reached a similar conclusion in *Vernon H.*, where we explained that Civil Rule 82 could not apply because it would " 'interfere with the unique character and purpose' of guardianship and conservatorship proceedings" in violation of Probate Rule 1(e). *In re Protective Proceedings of Vernon H.*, 332 P.3d 565, 577 (Alaska 2014) (quoting Alaska Rule Prob. P. 1(e)).

Applying Rule 82 would also conflict with the legislature's evident intent to keep costs low while giving OPA these tools for addressing elder fraud. As discussed above, this concern was the precise reason the legislature created a cost-recovery mechanism when it established the Office of Elder Fraud and Assistance. Applying Rule 82 to elder fraud cases brought by the Office would entirely undermine the legislature's purpose in creating this cost-recovery scheme. In addition, our conclusion that Rule 82 does not apply is consistent with the legislature's decision to model the elder fraud protective order statute on the provisions for domestic violence protective orders,[58] which— again — do not provide for an award of attorney's fees against the petitioner.[59]

Accordingly, in the context of elder fraud protective orders under AS 13.26.207-.209, we conclude that the cost-recovery mechanism established by AS 44.21.415(e) entirely displaces Civil Rule 82.[60] And because that cost-recovery mechanism does not allow either the person accused of elder fraud or the protected

---

[58] Minutes, H. Finance Comm. Hearing on S.B. 86, 27th Leg., 2d Sess. 1:44-1:48 (Mar. 1, 2012) (testimony of Kelly Henriksen, Assistant Att'y Gen.); Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:35-1:36 (Apr. 11, 2011) (testimony of Sen. Hollis French); Minutes, S. Judiciary Comm. Hearing on S.B. 86, 27th Leg., 1st Sess. 1:53-1:55 (Feb. 21, 2011) (testimony of Kelly Henriksen, Assistant Att'y Gen.).

[59] AS 18.66.100(c)(14) (providing that a domestic violence protective order may "require the respondent to pay costs and fees incurred by the petitioner").

[60] Although the regulation interpreting AS 44.21.415 suggests that Rule 82 might apply in proceedings brought by the Office, specifying that the Office can seek a standard fee recovery from the defendant "unless the court finds justification for a higher award under Alaska Rule of Civil Procedure 82," for the reasons explained above we conclude that a fee award under Rule 82 would be inconsistent with the statutory scheme established by AS 44.21.415. *See* 2 AAC 60.310; AS 44.21.415(e).

person to recover attorney's fees from OPA, no fees are available to Sidney or Jean R. in this case.

Jean's estate argues that a fee scheme that does not provide for a fee award against OPA "promotes unnecessary or vindictive litigation sin[c]e the petitioner need not worry about an adverse fees award." But again, the legislature chose not to create a fee-shifting mechanism that might act as such a check on OPA's elder fraud prosecutions, evidently trusting that the State's limited resources and OPA's prosecutorial discretion would lead the Office to focus on the most meritorious elder fraud cases. Here, the superior court was understandably concerned that OPA had imposed significant costs on Jean and Sidney by pursuing an elder fraud protective order based on allegations that were ultimately found to be "entirely without merit." On the other hand, OPA did have some evidentiary basis for its petition at the time of filing: The record indicates that the Office reviewed bank statements, subpoenaed and reviewed financial records, interviewed Shelley and Geoffrey, communicated with the Adult Protective Services case worker in contact with Jean, and reviewed documents related to the financial expenditures at issue. Further investigation, of course, eventually led the court to conclude that Sidney's expenditures were not fraudulent and that Sidney had in fact provided loving care to her mother. But this ultimate result cannot change the fact that the legislature created a cost-allocation scheme under AS 44.21.415(e) that does not permit an award of attorney's fees against OPA.

We therefore reverse the superior court's award of attorney's fees in connection with the elder fraud protective order proceeding.

**B.** **The Superior Court Did Not Err In Denying Attorney's Fees Against OPA In The Conservatorship Proceeding.**

On cross-appeal, Jean's estate and Sidney also challenge the superior court's denial of fees in the separate conservatorship proceeding. In reviewing this decision, we first note that the superior court properly concluded that AS 13.26.131(d) is the applicable statute. If there was any doubt as to its applicability at the time of the superior court's order, our opinion in *Vernon H.* has since clarified that AS 13.26.131(d) applies "in every guardianship or conservatorship case."[61] Accordingly, "AS 13.26.131(d) entirely displaces Civil Rule 82 in [this] conservatorship proceeding[]."[62]

By its plain terms, AS 13.26.131(d) allows a fee award only against a party who "*initiated* a proceeding under this chapter that was malicious, frivolous, or without just cause."[63] The superior court found that OPA, by continuing to litigate the conservatorship proceeding that was brought by Shelley, did not "initiate a proceeding" within the meaning of that provision. In continuing to litigate the conservatorship, OPA took the role of an interested party, but that involvement did not convert OPA into the initiator of the proceeding.

Sidney now argues that OPA "acted as a party from the very beginning of the case" because OPA's lawyers consulted with Shelley and, according to Sidney's allegations, OPA's lawyers actually prepared the revised conservatorship petition that was submitted in Shelley's name. But the superior court found that even Shelley's amended petition was "signed personally by [Shelley], and not by counsel for OPA[]"

---

[61]     *Vernon H.*, 332 P.3d at 577.

[62]     *Id.*

[63]     Emphasis added.

and that "[t]he case was initially filed by [Shelley] . . . and [there was] no reason to believe that she was prompted to do so by OPA[]." Given that Shelley filed the conservatorship petition, it is clear that she initiated the proceeding within the meaning of AS 13.26.131(d). Thus the superior court correctly concluded that OPA had not initiated the proceeding, and therefore no fee award against OPA was available under AS 13.26.131(d).

The superior court was justifiably puzzled by OPA's decision to continue the litigation, particularly when facts such as the correct names of the passengers on the airline tickets had already come to light, and the superior court aptly noted that "[o]ne could second guess the way this case was litigated." But we agree that OPA's decision to continue litigating the conservatorship cannot trigger the provision for fees against the initiator of the proceeding, even if that decision may have prolonged the case and raised costs for all parties involved. And in the settlement agreement reached in the conservatorship proceeding, Jean and Sidney agreed not to seek fees against Shelley, the only party who might otherwise be subject to fees as the initiator of that proceeding.

Jean's estate and Sidney also argue that a fee award is justified because collateral estoppel or res judicata should have barred OPA's continued litigation of the conservatorship petition after the elder fraud proceeding was closed, making OPA's continued litigation "vexatious, frivolous, not in good faith and without just cause." But we need not reach this issue given our conclusion that, as a threshold matter, a fee award under AS 13.26.131(d) is not available against a party who did not initiate the proceeding.[64]

---

[64] We also note that AS 13.26.230 provides that, unless "otherwise compensated for services rendered, any visitor, lawyer, physician, conservator, or special conservator appointed in a protective proceeding is entitled to reasonable compensation
(continued...)

Lastly, Sidney and Jean's estate argue that AS 13.26.353(c) justifies a fee award. But AS 13.26.353(c) is not a fee-shifting statute. Rather, it provides a statutory cause of action against "third part[ies] who fail[] to honor a properly executed statutory form power of attorney. . . ."[65] Pursuing formal adjudication of a conservatorship petition through the court system is not a "fail[ure] to honor" a power of attorney but rather an explicit recognition of its legitimacy. Here, accordingly, no fees are available under AS 13.26.353(c).

For these reasons, we conclude that the superior court did not err in declining to award fees against OPA in the conservatorship proceeding.

## V.    CONCLUSION

We REVERSE and VACATE the superior court's fee award in the elder fraud protective order proceeding. We AFFIRM the denial of attorney's fees in the conservatorship proceeding.

---

[64](...continued)
from the estate." *See In re S.H.*, 987 P.2d 735, 742 (Alaska 1999) (holding that the petitioner's costs in a conservatorship proceeding should be charged against the respondent's estate). None of the parties has cited this statute, and it does not appear to affect the result in this case. We therefore express no opinion on the relationship between AS 13.26.131 and AS 13.26.230 in other cases.

[65]     AS 13.26.353(c).